# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

---

HENRY C. LEONARD v. CHARLOTTE CLARK.[1]

January 22, 1909.

Nos. 15,833—(179).

**Denial of New Trial—Appeal.**

The evidence in this case is not so manifestly against the findings of the trial court as to require the reversal of the order denying a motion for a new trial.

Action in the municipal court of Duluth to recover $317 for medical services rendered at the request of defendant to a third person. The case was tried before Windom, J., who found in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed to the district court for St. Louis county and from an order of that court, Cant and Dibell, JJ., affirming the order of the municipal court, plaintiff appealed. Affirmed.

*Ross & McKnight,* for appellant.

*E. P. Towne, W. S. Telford,* and *Edmund Ingalls,* for respondent.

ELLIOTT, J.

This action was commenced in the municipal court of the city of Duluth to recover the value of professional services alleged to have been rendered at the request of the defendant. The plaintiff was a

---

[1] Reported in 119 N. W. 485.

107 M.—1

physician and surgeon, and was called to attend an employee of the defendant, who had been injured while working about a laundry. He attended the girl during several months. The case was tried without a jury, and the court found as a fact that the services were not rendered at the instance and request of the defendant. A motion for a new trial was made and denied. From this order the plaintiff appealed to the district court, which affirmed the order of the municipal court. On the appeal from that order, we are now asked to review the evidence and reverse on the ground that the finding of fact made by the municipal judge was not justified by the evidence.

The action was brought to recover on the theory that the services were worth $317 and were rendered at the special instance and request of the respondent, Mrs. Clark. The answer was a general denial. Dr. Leonard testified that on August 23, 1906, he was called to the laundry by telephone to see the girl who had just been injured, and was there requested by Mr. Clark, the respondent's manager, to take charge of the case and do what was needed. There was no talk then about pay. He dressed the injury, and Clark had the girl taken to her home. Dr. Leonard continued to care for the girl at her home until April 5, 1907. During that time he says he consulted with Mr. Clark, and sometimes with Mrs. Clark, as to what would have to be done. Dr. Leonard says at no time was it intimated that he was not in their employ.

On his first visit to the house some one there made himself disagreeable to the doctor, and the same thing occurred at the next visit. Dr. Leonard testified that on the twenty sixth of March he met Mr. and Mrs. Clark on the street and informed them that he would not continue with the case, and that Mrs. Clark then told him "to go ahead and there would be no further trouble." He refused to attend the case longer unless arrangements could be made so that he would not be interfered with. Nothing was then said as to who would pay for his services.

On December 12, Mrs. Clark was at Dr. Leonard's office, and they considered "what was best to do with Tozzy Delaske, and especially with the fear there would certainly be costs to pay." He says that he had a number of conversations with Mr. Clark with reference to the payment of his bill, but never mentioned it to Mrs. Clark. In April, 1907, he presented his bill to Mr. Clark at the laundry, when Mr. Clark

said that they did not wish to settle the bill until after they "had made a settlement with the Delaskes, because they thought by giving them a lump sum and getting them to assume the bill they could get off cheaper, and he told me he didn't want the bill presented then, and didn't want to know what it was, so they could make a better settlement with the Delaskes, as he thought." During the conversation Dr. Leonard said to Mr. Clark: "Well, don't make any settlement without letting me know, so I can garnishee and get my bill. Q. What you said was, 'Don't make any settlement without letting me know, so I can garnishee?' A. We made that settlement just in that way." Dr. Leonard made no charges to the Delaskes for these services.

The defendant, Mrs. Clark, testified that she was the proprietor of the laundry, and that her husband was her manager, and had authority to employ a physician to attend any one who was injured at the laundry. She never employed Dr. Leonard to attend the girl. She did not remember having the conversation with him three days after the accident. She had a conversation with Dr. Leonard on December 12, 1906. She knew her husband had called Dr. Leonard at the time of the accident, but never had any conversation with him about his bill. She knew he was treating the girl, and she talked with him about her. She made a settlement with the girl, but did that before she knew Dr. Leonard had charged her for his services. In making the settlement, she testified: "I didn't expect, if they signed an agreement, * * * we were to pay the bill; but they didn't do that, and they assumed the responsibility of the bill themselves, and they were to pay it. Never said a word to Dr. Leonard about the bill, never spoke of it." Mr. Clark testified that he instructed some one to telephone for Dr. Leonard; remembered meeting Dr. Leonard on the street a few days after the accident; had no conversation then with Dr. Leonard as to who was responsible for his bill for services.

After the girl was able to go to work, Dr. Leonard came in "and wanted to know who he should make his bill out to. I told him that he need not make out any bill; that we would see how we would settle with them, and he said, 'Well, if you should settle with them, let me know, will you?' I said, 'I will guarantee to let you know if we settle, and they agree to pay the bill, and they are to pay the bill.' 'If you settle and they are to pay the bill,' he said, 'I wish you would be

sure and let me know, so I can possibly garnishee the money before it passes into their hands.' I said, 'I will let you know when the money passes, so you can protect yourself.' And he said, 'That will be all right.'" After the settlement was made, Dr. Leonard called on Mr. Clark and asked to whom he should make out his bill. Mr. Clark testified that he replied, "You make it out to them, the settlement was made, and they are to pay the doctor. He said, 'The money has not been paid yet?' I said, 'No; Mr. Towne has the check ready to pay it over; possibly you had better go and see him.'"

Questions of fact only are involved on this appeal; but the earnestness with which the appellant contends that the finding of the trial judge, which on appeal was approved by two district judges, is manifestly contrary to the great weight of the evidence, has induced us to review the evidence to this extent. The evidence is not at all conclusive. Dr. Leonard testified, in effect, that he was employed by Mrs. Clark, and this she denied. She also denied conversations from which the plaintiff sought to have the inference of employment drawn. The evidence as to the emergency call would have created liability for the value of the services then rendered. But the record contains no evidence of the value of such services. The dealing with reference to the assumption of the doctor's claims if settlement was made, and the arrangement with reference to suing the girl and garnishing the Clarks, lends color to the theory that the appellant was not then asserting an absolute claim against the Clarks.

This court would not be justified in saying that there is no evidence reasonably tending to sustain the finding of fact that Mrs. Clark never employed Dr. Leonard, and the order denying a new trial is therefore affirmed.

Order affirmed.

JAGGARD, J., dissents.